IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| HANCOCK WHITNEY BANK, | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. CV:20-10-KD-C |
| CHARLIE HEATH MASON and TONI SCOTT MASON d/b/a 7 GENERAL CONTRACTING, INC., | § § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

This matter is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(3) and S.D. Ala. GenL.R. 72(a)(2)(S), on Plaintiff Hancock Whitney Bank's (hereinafter "Plaintiff" or "Hancock Whitney") Motion for Entry of Default Judgment, (Docs. 11 & 16), which was filed initially on February 13, 2020 and amended on April 16, 2020. Upon consideration of the Plaintiff's pleadings (Docs. 1, 11, 14, 16 and 17 in particular), it is recommended that Plaintiff's Motion for Entry of Default Judgment be **GRANTED**.

### I. PROCEDURAL HISTORY

On January 7, 2020, Plaintiff filed this Complaint, in which it seeks to collect unpaid balances that are due from Defendants 7 General Contracting, Inc., an Alabama corporation with its principal place of business in Baldwin County, Alabama, Charlie Heath Mason, individually (hereinafter, "C. Mason") and Toni Scott Mason, individually (hereinafter, "T. Mason") (C. Mason, individually, and T. Mason, individually, hereinafter referred to as the "Mason Defendants"). (Doc. 1, PageID.1-41). Summonses for each of the defendants were issued on January 8, 2020, (Doc. 3), and were served on C. Mason, individually, and Charlie Health Mason

1

d/b/a 7 General Contracting, Inc., on January 10, 2020, (Doc. 6, PageID.60), and on T. Mason on January 14, 2020, (*Id.* at PageID.58).

On January 22, 2020, Plaintiff's counsel filed a Suggestion of Bankruptcy and Limited Motion to Stay Proceedings (Doc. 7), advising the Court that Defendant, 7 General Contracting, Inc., filed for Chapter 11 bankruptcy protection in the U.S. Bankruptcy Court, Southern District of Alabama, Case No. 20-10172-HAC-11 styled 7 General Contracting, Inc. An Order was entered (Doc. 8, PageID.65), staying further proceedings against 7 General Contracting, Inc. pending further Order of the Court. The claims against the Mason Defendants were not stayed and the claims against these defendants remained pending. (*Id.*).

On February 5, 2020, twenty (20) days after the Mason Defendants were served, Plaintiff filed its Application for Entry of Default Judgment by the Clerk, in which it requested the Clerk of Court enter a default, pursuant to Rule 55(a), Federal Rules of Procedure (hereinafter, "FRCP" followed by the Rule number), against Defendants Charlie Heath Mason and Toni Scott Mason because they failed to file a responsive pleading. (Doc. 9. PageID.67). On February 6, 2020, the Clerk of Court entered a default against the Mason Defendants, (Doc. 10, PageID.69), and Plaintiff filed its instant Motion for Entry of Default Judgment against the Mason Defendants on February 13, 2020. (Doc. 11, PageID.70). Pursuant to court orders entered on March 26, 2020 and April 15, 2020, additional evidence has been presented in support of the pending motion for a default judgment. (See Docs. 13, 14, 15, 16 & 17).

II.     **JURISDICTION AND VENUE**

Plaintiff alleges jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). Plaintiff is a Mississippi banking organization that is organized under the laws of the State of Mississippi with its principal place of business in Mississippi, and routinely conducts business in the State of Alabama. (Doc. 1, ¶ 1). Plaintiff alleges Defendant C. Mason is an

2

individual residing in Mobile, Alabama, (Doc. 1, ¶ 3), and Defendant T. Mason is an individual residing in Mobile, Alabama, (Doc. 1, ¶ 4). Lastly, Plaintiff alleges the amount in controversy exceeds $75,000.00. (Doc. 1, ¶ 7).

The citizenship allegations are accepted as true since they were presented by counsel for Plaintiff pursuant to FRCP 11(b)(3), *see* FED. R. CIV. P. (11)(b)(3) ("By presenting to the court a Pleading … an attorney … certifies that to the best of the person's knowledge, information, and belief, formed after a reasonable inquiry under the circumstances … the factual contentions have evidentiary support."), and it is clear the amount in controversy exceeds the jurisdictional threshold.

The Court has also considered the issue of whether personal jurisdiction over the defendants exists in this action. *See Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) ("Service of Process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served."). "The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 925 n. 15 (11th Cir. 2003).

Plaintiff alleges the Mason Defendants are residents of Mobile County, Alabama and has presented proof of personal service on each. Therefore, all defendants[1] are amendable to the jurisdiction of this Court.

---

[1] Defendant 7 General Contracting, Inc., is an Alabama corporation with its principal place of business in Baldwin County, Alabama. However, as discussed *supra*, this action is stayed against Defendant 7 General Contracting, Inc. until further Order of the Court. This reference to "all defendants" applies to Defendants C. Mason, individually, and T. Mason, individually.

3

## III. FINDINGS OF FACT

On December 13, 2018, 7 General Contracting, Inc. (hereinafter "7 General") executed a Promissory Note (the "Note") in the amount of $3,425,000.00 in favor of Hancock Whitney. (Doc. 1-1, PageID.14-16). On or about December 13, 2018, C. Mason, as President of 7 General, executed a Business Loan Agreement (hereinafter "BLA") in the amount of $3,425,000.00 on behalf of 7 General. (Doc. 1-2, PageID.17-22). Also, on or about December 13, 2018, C. Mason, President of 7 General, executed a Commercial Security Agreement in the amount of $3,425,000.00 in favor of Plaintiff. (Doc. 1-3, PageID.23-27).

C. Mason and T. Mason each executed a Commercial Guaranty on December 13, 2018 (collectively the "Guaranties"). (Doc. 1-4, PageID.28-34). Pursuant to the Guaranties, C. Mason and T. Mason unconditionally (and jointly and severally) guaranteed the payment, performance, and complete fulfillment of all the obligations of 7 General, whether then existing or thereafter acquired, of the Note and the BLA to Plaintiff. (Doc. 1-4). The Guaranties' provisions obligate the Mason Defendants to guarantee the performance of all the obligations of 7 General to Hancock Whitney and provide for the recovery of attorneys' fees and expenses:

> **Continuing Guarantee of Payment and Performance**: For good and valuable consideration, Guarantor absolutely and unconditionally guarantees the full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and the Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.
> …

> **Attorney's Fees; Expenses**. Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.
> …
> **Definitions.**
> …
> **Borrower**. The word "Borrower" means 7 GENERAL CONTRACTING, INC., and includes all co-signers and co-makers signing the Note all their successors and assigns.
> **Guarantor**. The word "Guarantor" means everyone signing this Guaranty, including without limitation CHARLIE HEATH MASON, and in each case, any signer's successors and assigns.
> **Lender**. The word "Lender" means HANCOCK WHITNEY BANK, its successors and assigns.
> **Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.
> **Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

Doc. 1-4, PageID.31-33.

The Note is in default and Plaintiff accelerated the indebtedness pursuant to the Note's terms and conditions. (Doc. 1, ¶ 12; Doc. 16-2, PageID.117). The Note, BLA, Commercial Security Agreement and Guaranties all provide for recovery of costs of collection, including, without limitation, reasonable attorney's fees. (Docs. 1-1, 1-2, 1-3, 1-4) (Collectively, hereinafter the Note, BLA, Commercial Security Agreement and Guaranties are referred to as the "Loan and Security Documents").

As of April 15, 2020, Plaintiff has submitted proof that the outstanding amount owed to Plaintiff pursuant to the Loan and Security Documents is $3,244,529.80, which consists of a principal balance of $3,161,414.10, accrued interest in the amount of $81,115.77 ($483.00 per diem) and late fees in the amount of $2,000.00, exclusive of continuing attorney's fees and other costs and expenses incurred Hancock Whitney. (Doc. 16-2, PageID.117-118).

Plaintiff has submitted evidence that as of April 8, 2020, it incurred $20,354.28 in attorneys' fees and expenses in an effort to collect the subject debt. (Doc. 17, PageID.122).

The individual defendants, C. Mason and T. Mason, are not infants, incompetents, or members of the military. (Doc. 14, PageID.100).

IV. **STANDARD OF REVIEW**

"An entry of default is appropriate when a party against whom affirmative relief is sought fails to plead or otherwise defend a case. See Fed. R. Civ. P. 55(a), (b). But a party's delay may result in a default judgment only if the party has been properly served because 'a court lacks jurisdiction over the person of a defendant when that defendant has not been served.'" *Hines v. Regions Bank*, 782 Fed. Appx. 853, 854 (11th Cir. 2019) (quoting *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990)).

The Federal Rules of Civil Procedure establish a two-part process to obtain a default judgment. Fed. R. Civ. P. 55. If "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" the clerk of court "must enter the party's default." Fed. R. Civ. P. 55(a). After default has been entered, if the "claim is for a sum certain or a sum that can be made certain by computation," the clerk must enter default. Fed. R. Civ. P. 55(b)(1). In all other circumstances, "the party must apply to the court for a default judgment." Fed. R. Civ.

P. 55(b)(2). Also, a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

> The Court of Appeals for the Eleventh Circuit has held that although "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact. The defendant, however, is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (per curiam) (citations and internal quotations omitted). Moreover, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations of the complaint ... actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id*. (emphasis omitted). Therefore, [Plaintiff] must establish a "prima facie liability case" against the defendants. *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F.Supp.2d 1353, 1357 (S.D.Ga.2004) (citations omitted).
>
> Also, when assessing default judgment damages, the Court has "an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2007). Therefore, when ruling on a motion for default judgment, the Court must determine whether there is a sufficient factual basis in the complaint upon which a judgment may be entered. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975).

*Gray Cas. & Sur. Co.*, 2012 WL 1145186, at *3-4 (S.D. Ala. Apr. 5, 2012).

Federal courts should not enter a default judgment against an infant or incompetent individual unless they are represented in the action. Fed.R.Civ.P. 55(b)(2). Additionally, in those cases where individual defendants do not make an appearance, "the court, before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit" that provides evidence of the military status of those individual defendants. 50 U.S.C. § 3931.

V. **ANALYSIS**

  **A. Governing Law**

[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). In Alabama, the courts follow the

traditional conflict-of-law principles of *lex loci contractus*. *Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009). Accordingly, contract claims are governed by the laws of the state where the contract was made, unless the contracting parties chose a particular state's law to govern their agreement, *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991).

*PNC Bank v. Classic Crab, Inc., et al.*, 2016 WL 1587237, *1-2 (S.D. Ala. April 19, 2016). Here, the Note (Doc. 1-1 at PageID.14) and the Guaranties (Doc. 1-4, PageID.29 & 32) provide that they shall be governed by the laws of Alabama. Thus, the Court will apply Alabama law.

**B. Breach of Promissory Note and Guaranty Agreements (Count I)**

"A promissory note is a form of contract; therefore, it must be construed under general contract principles." *Merchants Bank v. Head*, 161 So.3d 1151, 1154 (Ala. 2014) (citing *Bockman v. WCH, L.L.C.*, 943 So.2d 789, 795 (Ala. 2006) (quoting *Dawkins v. Walker*, 794 So.2d 333, 339 (Ala. 2001), quoting in turn *Ex parte Dan Tucker Auto Sales, Inc.*, 718 So.2d 33, 35–36 (Ala.1998)). "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Financial Corp.*, 29 So.3d 872, 880 (Ala. 2009) (internal quotes omitted).

"Under Alabama law, production of a properly executed note, valid and unsatisfied on its face, makes a prima facie case of default." *Wells Fargo Bank, N.A. v. Trotman*, 940 F.Supp.2d 1359, 1364 (M.D. Ala., 2013) (internal punctuation omitted); *Wells Fargo Bank, N.A. v. Vergos*, 2012 WL 206169, at *2 (S.D. Ala., 2012) ("Alabama law provides that the proffer of a copy of the note and affidavit testimony as to the amounts due under the note, as well as the defendant's failure to make the required payments, is sufficient to establish a plaintiff's case to recover a note."); s*ee also Griffin v. American Bank,* 628 So.2d 540, 543 (Ala.1993) (finding that the bank was entitled to summary judgment on promissory note where bank's president submitted affidavit attaching

8

copy of the note and stating that borrower made no payments on note, and borrower did not offer evidence in defense) and *Chilton Warehouse & Mfg. Co. v. Lewis,* 57 So. 100, 101 (Ala.App. 1911) (stating that upon introduction of note into evidence burden shifts to defendant to show that the holder is not entitled to recover thereon).

> The legal standard under Alabama law for a breach of guaranty claim bears close resemblance to that governing promissory note-based claims. *See Eagerton v. Vision Bank*, 99 So.3d 299, 304 (Ala. 2012) ("Rules governing the interpretation and construction of contracts are applicable in resolving a question as to the interpretation or construction of a guaranty contract.... Absent fraud in the inducement, an absolute guaranty will be enforced according to its terms....") (citations omitted); *see also Black Warrior Minerals, Inc. v. Fay*, 82 So.3d 650, 653 (Ala. 2011) (reading terms of guaranty in context and giving them their "ordinary, plain, and natural meaning"). Thus, "[e]very suit on a guaranty agreement requires proof of the existence of the guaranty contract, default on the underlying contract by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty." *Adams v. Tractor & Equipment Co.*, 180 So.3d 860, 869 (Ala. 2015) (citation omitted).

*First Community Bank v. M/V MISS ANNA*, 2016 WL 7319687, at *3 n. 4 (S.D. Ala., December 15, 2016).

Upon review of the pleadings that include uncontroverted copies of the Loan and Security Documents, the Court is satisfied that the well-pleaded allegations state a basis for relief and there is a substantive and sufficient factual basis for the relief sought by Plaintiff. Specifically, Plaintiff has one remaining claim for breach of the Loan and Security Documents executed in favor Hancock Whitney. (Doc. 1, Count One, PageID.10-11).[2] The documents submitted by the Plaintiff support the allegations in its Complaint that Plaintiff loaned 7 General $3,425,000.00 on a note dated December 13, 2018. (Doc. 1, Exhibit A) C. Mason and T. Mason, each executed Commercial Guaranty agreements on December 13, 2018 to guarantee the payment, performance, and complete

---

[2] During the pendency of this action, the Court is informed through the Amended Motion for Default Judgment (Doc. 16-2) that the Second Promissory Note on which Count Two of the Complaint is premised has been satisfied in full. (*Id.* at PageID.118).

9

fulfillment of all the obligations of 7 General, not only pursuant to the Note but also pursuant to a Business Loan Agreement executed by 7 General on December 13, 2018 (Doc. 1, PageID.8-10). When 7 General failed to make payments as required under the notes and after acceleration of the indebtedness, the Mason Defendants did not perform as agreed but defaulted and "made no effort to pay any portion of the balances owed on the subject loans… ." (Doc. 11, Exhibit A, PageID.84). Thus, the evidence is that 7 General entered into a loan that was guaranteed by commercial guaranties, all defendants defaulted under the terms of the loan, and the Mason Defendants defaulted under the terms of the commercial guaranties. Additionally, Plaintiff has provided sufficient evidence of damages and the attorneys' fees and expenses incurred.

The Mason Defendants, by their default, have admitted Plaintiff's well-pleaded factual allegations in the complaint. *Maus v. Ennis*, 513 Fed.Appx. 872, 880, 2013 WL 1150140, at *6 (11th Cir. 2013) ("After a default is entered against a defendant, he is deemed to have admitted the plaintiffs' well-pleaded factual allegations, and on appeal, he is barred from contesting those facts. Thus, '[a] default judgment is unassailable on the merits, but only so far as it is supported by well-pleaded allegations.'" (quoting *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,* 561 F.3d 1298, 1307 (11th Cir.2009)). Because all well-pleaded allegations set forth in the Complaint are admitted, Plaintiff has established (1) the existence of valid contracts binding Plaintiff and the Mason Defendants, (2) Plaintiff's performance under the contracts, (3) Mason Defendants' nonperformance under the contracts, and (4) damages suffered by Plaintiff as a result of Mason Defendants' nonperformance. The Court finds Plaintiff has thus sufficiently stated a claim entitling it to a default judgment for Defendants' breach of the Note and the Guaranties.

The Mason Defendants are not infants, incompetents or members of the military, therefore the entry of a default judgment as requested by the Plaintiff is not violative of Fed.R.Civ.P.

55(b)(2) or 50 U.S.C. § 3931.

FRCP 54(c) provides "a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).[3] Plaintiff's claim for the balances due under the Loan and Security Documents in its instant Motion for Default Judgment, remain the same as requested in the Complaint. Thus, it is determined that the default judgment sought is consistent with the allegations and relief sought in the Complaint.

Plaintiff's allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages. *Anheuser Busch, Inc. v. Philpot,* 317 F.3d 1264, 1266 (11th Cir. 2003) (The "court has an obligation to assure that there is a legitimate basis for any damage award it enters."). The Court is not required, however, to conduct an evidentiary hearing to fix damages if the amounts of the

---

[3] In Plaintiff's Complaint, it made demand for:

    (a)    general damages against Defendants, 7 General Contracting, Inc., Charles Heath Mason and Toni Scott Mason in the amount of $3,219,996.40, plus the applicable per diem;

    (b)    additional prejudgment interest as provided by the Loan and Security Documents and the Second Promissory Note;

    (c)    all incurred, accruing and future reasonable attorney's fees and costs, plus reasonable attorney's fees and costs that may be incurred in the event of any appeals and/or post judgment enforcement and/or collection efforts;

    (d)    all accruing late charges and fees;

    (e)    all costs of court;

    (f)    interest at the maximum rate provided by the Loan and Security Documents, the Second Promissory Note and Alabama law on the total amount of the judgment, from the date of judgment until paid in full; and

    (g)    such other and further relief to which Hancock Whitney Bank may be entitled.

Doc. 1, PageID.11-12.

damages sought by the Plaintiff are adequately supported by affidavits and other documentation. *Baumann v. Bank of America, N.A.*, 734 Fed. Appx. 664, 671 (11th Cir. 2018) ("Nevertheless, we have held that damages for a default judgment may not be entered without an evidentiary hearing 'unless the amount claimed is a liquidated sum or one capable of mathematical calculation.'") (quoting *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543–44 (11th Cir.1985)).

It is the opinion of the undersigned that this case does not require an evidentiary hearing prior to the entry of a default judgment because the issues are not complicated and are uncontested. In addition, Plaintiff has not requested a hearing and has advised the undersigned that a hearing is not necessary.

The affidavits of Jeremy J. Martin reveal that Plaintiff is seeking a sum certain in damages, or at the least, a sum that can be made certain through computation. (Doc. 11-2, PageID.84-86; Doc. 16-2, PageID. 117-118).[4] As of April 15, 2020, the outstanding balance of the Note is stated to have been $3,244.529.80, comprised of a principal balance of $3,161,414.10, accrued interest in the amount of $81,115.77 and late fees of $2,000.00. The per diem rate to be applied during the period of time between April 15, 2020 and the date a judgment is entered is calculated at a rate of $483.00 per day.

---

[4] Affidavits like the ones provided by Mr. Martin in his capacity as Vice-President at Hancock Whitney Bank, have been found to contain sufficient evidence for the Court to determine the amounts owed pursuant to the dictates of the loan documents, especially when this evidence is filed in combination with the filing of the loan documents themselves. See *Branch Banking and Trust Company v. Angels of Columbus, LLC*, 2016 WL 1337327, at *3 (M.D. Ga., 2016) (The uncontroverted affidavit of BB&T's senior vice-president and records custodian establishes the amount of BB&T's damages as a matter of law.); see also *First Citizens Bank & Tr. Co., Inc. v. River Walk Farm L.P.*, 620 F. App'x 811, 814-15 (11th Cir. 2015) (per curiam) (affirming summary judgment for the bank based on the affidavit of the bank's vice-president and records custodian because this evidence established a prima facie case and defendant did not rebut the evidence).

Pursuant to the Note, 7 General was to repay the note in 23 regular payments of $38,175.02 starting on January 13, 2019 and continue each month thereafter on the same day of the month. The final payment of $2,933,961.86 was due on December 13, 2020. (Doc. 1-1, PageID.14). The Loan Transaction History provided by Plaintiff on April 16, 2020 shows that at the time payments stopped, November 13, 2019, the outstanding principal balance was $3,161,414.10. (Doc. 16-2, PageID.119). This evidence, along with the unopposed allegations and affidavits on file, establish that the principal owing on the Note and the Guaranties is $3,161,414.10.

Plaintiff is also claiming accrued interest in the amount of $81,115.77 as of April 15, 2020 plus the addition of interest at the rate of $483.00 per day thereafter. Martin's affidavits, supported by a "Summary Balances Inquiry" (Doc. 16-2, PageID.118, 120), is found to be sufficient evidence of the interest owed and per diam rate of accruing interest.

Alabama law allows pre-judgment interest in a breach of contract action at the rate agreed to by the parties to the contract. Ala. Code § 8-8-8. The Note contains a provision for the interest rate to be charged upon default.

> "Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 18.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law."

Docs. 1-1, PageID.14 and 1-5, PageID.34. The enforceability of clauses in promissory notes calling for default interest rates of 18% has been upheld in this Court. *See eg., Whitney Bank v. Point Clear Dev., LLC*, 2012 WL 2277597, at *5 (S.D. Ala. June 18, 2012) ("18% default rates are a common feature of modern commercial loans, and have been routinely enforced by courts applying Alabama law, including several recent cases emerging from this District Court.") (collecting cases); *Vision Bank v. Hill*, 2011 WL 250430, at *3 (S.D. Ala. Jan. 25, 2011) (awarding 18% default interest rate provided in promissory notes).

Plaintiff is also seeking, as part of the judgment, $2,000.00 in late fees. The Note provides for the payment of late fees as follows:

> LATE CHARGE. If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $1,000.00, whichever is less.

Doc. 1-1, PageID.14. Since the Loan Transaction History reveals that no regular payments were made after October 13, 2019, it is determined that the late payment charges apply to the November and December 2019 payments that were never made. (Doc. 16-2, PageID.119). Thus, $2,000.00 in late fees should be included in the judgment.

Accordingly, Plaintiff's Motion for Default Judgment should be granted as to its claim for general damages under the Loan and Security Documents in the principal amount of $3,161,414.10, accrued interest in the amount of $81,115.77 as of April 15, 2020 plus the addition of interest at the rate of $483.00 per day thereafter until judgment is entered, and $2,000.00 in late fees.

**C. Attorneys' Fees**

As to Plaintiff's claim for attorneys' fees and expenses, the Loan and Security Documents provide for reasonable attorney's fees in the event of a default. (Doc. 1-1 at PageID.14; Doc. 1-2 at PageID.20; Doc. 1-3 at PageID.26; and Doc. 1-4 at PageID.29-30). Plaintiff has submitted evidence that it incurred attorneys' fees totaling $20,354.28 as of April 8, 2020. (Doc. 17, Hartley aff., PaigeID.122-124) In Alabama, attorneys' fees are recoverable when provided for in a contract, *see. e.g., James v. James,* 768 So.2d 356, 360 (Ala. 2000), as is the case here, and in the Eleventh Circuit, "a request for attorneys' fees pursuant to a contractual clause is considered a substantive issue." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.,* 312 F.3d 1349, 1355 (2002), *abrogated as stated in Ray Haluch Gravel Co. v. Central*

*Pension Fund of International Union of Operating Engineers and Participating Employers,* 571 U.S. 177, 134 S.Ct. 773, 187 L.Ed.2d 669 (2014).

### 1. Reasonable Rate

The Plaintiff must present specific and detailed evidence from the Court is able to determine the reasonable rate for the work performed. *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 427 (C.A.11 (Ga.), 1999) ("The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates…. That burden includes supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate.") (Internal citation and quotation marks omitted). A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. In this case, the relevant legal community is Mobile, Alabama. (*Id*.) (the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed).

The rates requested include rates for time counsel ($275/hour for partners and $230/hour for associates) as well as paralegals ($95/hour) expended, for a total 77.30 hours litigating this case. (Doc. 17, PageID.123).

### a. Attorneys' Hourly Rate

Plaintiff seeks $275/hour for 15 hours of work by Charles R. Mixon, Esquire (partner with over 30 years experience); $275/hour for 36.4 hours of work by Jeffery J. Hartley, Esquire (partner with 22 years experience); $230/hour for 10.7 hours of work by Colin Sigler, Esquire (associate with less than 5 years experience); and $230/hour for .5 hours of work by Philip D. Mahoney,

Esquire (associate with over 5 years experience.)[5] The requested hourly rate for partners Mixon and Hartley are within the range of fees authorized by this Court for senior level partners, which has been found to be $250-300/hour. *Wells Fargo Bank, N.A. v. Peterson Produce, Inc*., 2018 WL 7286505, at *3 (S.D. Ala., 2018) ("[I]n the relevant market of Mobile, [Chief Judge DuBose] has found $250-300/hour to be a reasonable hourly rate for senior level attorneys/partners with decades years of experience…."). In addition, this Court has recently found these same rates to be reasonable for Mixon and Hartley. See *Hancock Whitney Bank v. Coumanis Allen, LLC, et al.,* Civil Action 1:19-cv-00002-MU (S.D. Ala. September 6, 2019) (Docs. 25-26) and *Hancock Whitney Bank v. Dumas Realty, Inc., et al*., Civil Action 1:19-00187-CG-MU (S.D. Ala. April 21, 2020) (Docs. 13, 15, & 16). The rate requested for associate Mahoney has also been previously approved in *Dumas Realty, Inc.* As to Sigler, the undersigned has been unable to find any history with this Court having determined a reasonable rate for his services. Therefore, it is determined that since it appears that he has practiced for 5 years or less an hourly rate for his services at the charged rate of $230/hour is unsupported in this case. Given the lack of information provided as to Sigler, it will be recommended that his work be compensated at a rate of $150 per hour.

Upon consideration of the request for attorneys' fees, it is determined that the work of Mixon and Hartley should be compensated at the rate of $275/hour, that Mahoney be compensated at the rate of $230/hour and that Sigler should be compensated at the rate of $150/hour.

### b. Paralegals' Hourly Rate

Plaintiff seeks recovery of fees for the work of three paralegals: Mallette, Wells, and Clausen, whose years of experience and qualifications have not been provided. In the Mobile

---

[5] Although Plaintiff did not provide all the historical data as to each attorney, based on the undersigned's experience with the Helmsing Leach firm over the years and the information available on its public website, any relevant information on the issue of reasonable attorneys' fees has been added by the Court.

market, the going rate for paralegal work not shown to be unusually qualified or experienced has usually been $75/hour. However, the rate of $95/hour was found reasonable in both of the two recent cases cited above (*Coumanis* and *Dumas Realty*). After a review of the nature of action as well as the inherent complications that could require additional paralegal services, it is determined that the hourly rate for the paralegal work in this case is reasonable at the charged rate of $95/hour.

### c. Reasonable Hours Expended

Even though two partners, two associates and three paralegals billed the client for services in this case, given the amount in controversy, the need to proceed with foreclosure sales and to litigate a portion of its claims in the Bankruptcy Court, the total fees billed to the client are deemed reasonable and necessary in this action. The fees to be awarded are recommended to be $15,855.00 in attorneys' fees (Mixon and Hartley 51.4 hours x 275/hour =$14,135.00; Mahoney .5 hours x $230/hour = $115.00; Sigler 10.7 hours x 150/hour =$1,605.00) and $1,396.50 in paralegal fees (14.7 hours x 95/hour =$1,396.50). Total fees are **$17,251.50**.

In addition to these attorneys' fees, Plaintiff also incurred expenses for copying ($27.40), a filing fee paid in this Court ($400), and a fee for serving the Complaint ($165.00). This amount, **$592.40** in costs, is determined to be reasonable and it is recommended that the judgment include these costs as was provided in the Loan and Security Documents.

Thus, plaintiff is entitled to an award of attorneys' fees and the aforementioned costs totaling **$17,843.90**. *Compare SE Property Holdings, LLC v. Loyal Advertising, LLC,* 2012 WL 2253243, *5 (S.D. Ala. June 15, 2012) ("Defendants did not contest plaintiff's assertion of its right to an award of reasonable and necessary attorneys' fees and expenses, nor did they contest the amount sought. The court finds that the amounts set forth in plaintiff's brief are reasonable and necessary and should be awarded.") *with id.* at *1 (attorneys' fees totaling $15,350.50) and *Wells*

*Fargo Bank, N.A. v. Maclay Construction, Inc.,* 2011 WL 6668319, *4 (S.D. Ala. Dec. 20, 2011) (attorneys' fees totaling $22,152.72). [6]

As to Plaintiff's claim for post-judgment interest, (Doc. 1, at 12), the United States Code provides that interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Therefore, post-judgment interest should accrue at the federal rate calculated pursuant to 28 U.S.C. § 1961(a) "from the date of the entry of the judgment". (*Id.*).

## CONCLUSION

Accordingly, it is recommended Plaintiff's Motion for Default Judgment, as amended (Docs. 11 & 16), be **GRANTED** as to Count One for general damages, pre-judgment interest, post-judgment interest, and attorneys' fees and expenses. A default judgment should be **ENTERED** in favor of Plaintiff Hancock Whitney Bank and against Defendants Charles Heath Mason and Toni Scott Mason as follows:

1. in the principal amount of **$3,161,414.10** as provided in the Loan and Security Documents;

2. accrued interest of **$81,115.77** as of April 15, 2020 pursuant to the Loan and Security Documents;

3. post motion interest from April 15, 2020 to the date of judgment at the per diem rate of **$483.00** pursuant to the Loan and Security Documents;

4. late fees in the amount of **$2,000** pursuant to the Loan and Security Documents;

5. attorneys' fees and expenses in the amount of **$17,843.90;** and

---

[6] It is also noted that the amount of attorneys' fees and expenses requested represents approximately .5499% of the recommended judgment. This percentage is calculated without knowing the amount of post motion interest accruing from April 15, 2020 to the date of judgment.

6. post-judgment interest should be authorized to accrue at the federal rate calculated pursuant to 28 U.S.C. § 1961(a) from the date of the entry of the judgment.

## **NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on un-objected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review an appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this the 26th day of May, 2020.

                s/WILLIAM E. CASSADY
                **UNITED STATES MAGISTRATE JUDGE**